IN this cause, the question was, whether the right to money, due to a bankrupt, from citizens of this commonwealth, was so transferred to the assignees of his effects that a british subject, who was a creditor of the bankrupt, resident in England, and did not clame any 'benefit from the assignment, could recover satisfaction for his demand out of that money ? upon which the court, the 26 day of September, 1794, delivered this
*299 OPINION,
That the question controverted between the parties, in, this cause, which is, in truth, a question between british creditors, on one side, and the assignees of a british debitor or debitors, declared a bankrupt or bankrupts, according to the laws of their country, on the other side, discussed before an american court, should be decided by those principles which ought to govern the decision, if the same question were discussed before an english court; and that, by the english statutes concerning bankrupts, all the personal property of a bankrupt, wherever it be, is so transferee! to the assignees that an english subject cannot recover a debt, contracted before the assignment, by an action against the bankrupt himself, or satisfaction for it out of his effects in the hands of others, although a creditor, Avho is not a british subject, and consequently not bound by the laws of Great Britain, (a) and perhaps too a british subject not having a domicilium in England, (b) may recover such debt, by an action against the bankrupt, or satisfaction for it out of his effects.
In consequence of which opinion the bill was dismissed,

 Upon the principles stated in the note (e) to the case between Page, executor of Cary, plaintiff, and Pendleton, &c, defendents, the english statute laws bind english subjects and regulate their personal rights every where, unless the case mentioned in the next following note to this case may bn an exception. if an english subject die intestate, his relations, whom the english statute' of distribution appoint to succede, will be intitled to his personal estate which may, at that time, be in Virginia, not those relations whom our statute of distribution, so far as it differs from the english, appoints; for example : brothers and sisters of the half blood will share equaly by the one, and but half so much by the other, &e. if an english trader' bé declared a bankrupt, and his estate be assigned by those who have the administration of such affairs, in that country,the title of the assignees would be supported, in the courts of this country, and the right of such creditors as are subject to the laws of England would be bound by the assignment.
If the bankrupt happen to have property which lies out of the jurisdiction of the law of England, if the country, in which it lies, procede according to the principles of well regulated justice, there ié no doubt but it wilt give effect to the title of assignees, by Loughborough, II. Blackstones reports, p. 691. this position is too general, and is not sufficiently qualified by what follows it in p. 693.
'Solomons vs Ross, in canc. 26 jannary, 1764, before mr. justice Bathurst, who sat for lord chancellor Northington. messieurs Deneufvilles, merchants and partners at Amsterdam, corresponded with Michael Solomons and Hugh Ross, merchants in London, on the 18 day of december, 1759, the Deneufvilles sloped payment, on the 1 day of january, 1760, the chamber of desolate; festátes in Amsterdam took cognizance thereof, and, on the next day, they were declared bankrupts, and curators or assignees appointed of their estates and effects. on the 20 day. of december, 1759, Ross, who, was a creditor of the *300 bankrupts to the amount of near 3000 pounds, made an affidavit of his debt in the mayors .court of London, and attached their moneys in the hands of Michael Solomons, who was their debitor to the amount of 1200 pounds, on the 8 day of march, 1760, Ross obtained judgement, by default, on the attachment, and thereupon a writ of execution was issued against Michael Solomons, who was taken into execution, but, being unable to pay the 1200 pounds, gave Ross his note payable in a month; on which Ross caused satisfaction to be entered on the records of the judgement, a few days after, one Israel Solomons, who had a power of attorney from the curators to act for them in England, filed a bill, making himself and the curators plaintiffs, praying that the defendent Michael Solomons might account with them for the effects of the bankrupts, which were in his hands, might pay and deliver the same over to Israel Solomons for the use of the curators, and be restrained from paying or delivering them over to Ross. Michael Solomons then filed a bill, by way of interpleader, praying an injunction, and that he might be at liberty to bring the 1200 pounds into court, this money was accordingly paid into the bank, in the name of the accountant general, persuant to an order of the court. The decree directed, inter alia, ‘ that the stock purchased with the money paid into the bank should be transfered to Israel Solomons, for the benefit of the creditors of the bankrupts, and that Ross should deliver up the note, given by Michael Solomons for 1200 pounds, to be canceled.’ H. Blackstone, p. 131. in the notes.
Similar decrees were made in two other cases there stated.
The principle of the decrees doth not appear.
In the first and second, it is supposed to be this: the laws of Holland divest the bankrupts property,out of him, and vest it in the curators or assignees, in that country, for the purpose of distributing the property among his creditors, and that the assignment comprehended the bankrupts right to moneys due to. ■litem in England : for
It is a .clear proposition, said Loughborough, H. Blackstone, p. 690, not only of .the law of England, but, of every country in the world, where law has the semblance of science, that personal property has no locality, the meaning of . tliat is, not that personal property has no visible locality but, that it is subject to %at law which governs the oioner.
This proposition is not free from ambiguity, the sense intended by the author of it is believed to be this: that the owners right to a personal thing, which is in one country, is subject todisposition of the law of another country, whereof the owner is a member; and, in that sense, is admitted to be true, with respect. ..to the-ovyger himself, and to all other people who are members of the same state „5yjth him ; but is not admitted to be true with respect to men who are not members of the same community.
The writer of these notes, differing in this point with three capital english' judges, js aware, that.he will be regarded with a fastidious eye by men, whose veneration for the westmonasterian oracles is equal to the veneration of the antieqts for the dodonaean and delphic oracles; but, when he has reason, the only despot, *to which he professeth unconditional submission, on his side, he will venture to differ with any man. he disapproves the determination in the cáse between ^olomons and Ross, on these considerations,
1. That Ross, if he were an english subject, as he is supposed to have been, vyas ngt bound by the laws of Holland, this is assumed for a proposition incontrovertible. ' - ....
2, That a creditor, in justice, hath a right to so much of his debitors estate as is equal to the demand, or to a proportion of the estate, if it be not sufficient *301 to satisfy the demands of all the creditors, the truth of this proposition is admitted, by the bankrupt laws both of England and Holland, appointing the assignees in one, and the curators in the other, distributors of the estate among the creditors; so that the assignees and curators are the trustees for and representatives of the creditors, and are chosen by them in one, and, perhaps, in the ■other too.
3. The law which authoriseth this appointment, if it do not bind the foreign creditor, can not legaly deprive him of his right to recover what is due to him, because the law was enacted without his consent, either individualy, or as a member of the community.
4. The right of Ross to satisfaction for his demand against Deneufvilles out of moneys in the hands of Solomon their debitor, whether, in Loughboroughs language, it had or had riot locality, was as much subject to the law which governed Ross, that is the law of England, as the right of the bankrupts to the same moneys was subject to the law which governed the Deneufvilles, the owners, that is the law of Holland : and, by the law of England, Ross was authorised to procede as he did to attach those moneys — now where such an opposition between two laws upon the same subject happeneth, why the law of Holland, which favoured the right of the curators, should prevail against the law of England, which favoured the right of the english creditor, or, in other words, why the coort should have prefered the title of the curators to the title of the creditor ■using the process of attachment, is not discerned.
The most just mode seemeth to be, in whatever court the matter be discussed, to' accommodate it by a proportionable distribution of the bankrupts effects among ■all the creditors of every country.
If the assignees of an english bankrupt bring suits in this court to recover money due from his debitors, and parties, not english subjects, demand a satisfaction of their demands out of the same money, the court will appoint a receiver of the money and not allow the assignees any part thereof, until they shall have thrown the effects collected by them into a common fund, for the benefit of all the creditors.

 John Horne Tooke.

 Because, 1. such a subject is not represented in the british parliament, and, therefore, as is conceived, ought not to be bound by its acts, although the english courts have determined otherwise, and the american courts too, before the late revolution, admitted british subjects, residing in the plantations, as they were then called, to be bound by acts of parliament, the terms of which spwialy comprehended the plantations, and 2. The bankrupts effects in England may be ad distributed among the creditors there, in some cases, before the creditors in the plantations could have notice of the bankruptcy in time to clame their shares.